UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **MEMORANDUM & ORDER** |
| -against- | **92-CR-0091 (NGG)** |
| GERALD MILLER, | |
| Defendant. | |

NICHOLAS G. GARAUFIS, United States District Judge.

The court GRANTS Defendant Gerald Miller's motion for early termination of supervised release.[1] (Def.'s Mot. for Early Term. ("Mot.") (Dkt. 941).)

## I.  BACKGROUND

The court is aware of the particularly serious nature of Miller's crimes, and has written about them in its prior orders. (*See* Order Granting Comp. Release ("Resentencing Order") (Dkt. 923) at 2-5.) In 1992, he and nine co-defendants were charged with a variety of crimes related to their roles in the Queens-based "Supreme Team" enterprise, a violent crack cocaine distribution organization that operated in the 1980s and 1990s, including through gruesome murders. (*Id.*) Eventually, he rose to become the leader of the enterprise. (*Id.* at 3.) At trial, a jury convicted Miller of eight separate counts including racketeering, in violation of 18 U.S.C. § 1962(c); conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A);[2] continuing a criminal enterprise offense, in violation of 21 U.S.C. §§ 848(a)

---

[1] Consequently, the court DENIES as moot Miller's earlier pro se motion for early termination of supervised release. (*See* Def.'s Pro Se Mot. for Early Term. (Dkt. 938).)

[2] This count was eventually dismissed on appeal as duplicative of his conviction for continuing a criminal enterprise offense, in violation of 21 U.S.C. §§ 848(a) and 848(b)(1). *United States v. Miller*, 116 F.3d 641, 678-79, 685 (2d Cir. 1997).

1

and 848(b)(1); four counts of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B). (*Id.*)

For his crimes, Judge Raymond J. Dearie then sentenced Miller to six life sentences plus an additional 20-year sentence. (*See id.* at 4.) Judge Dearie nonetheless expressed hope that Miller might move past his prior criminal conduct, explaining to him that "with the intelligence that you have, you could find some way, some way to discourage others who would likely admire you if they saw you on the street from following in your footsteps." (*Id.* (citing Sent. Tr. (Dkt. 862) at 56:6-9.)

Miller then spent 34 years in custody. (Resentencing Order at 2 n.2.) Over that long period, he took to heart what he later described as Judge Dearie's "words of wisdom." (*Id.* at 5.) He rehabilitated himself during this time in prison. Miller completed over 1,500 hours of programming and educational opportunities. (Mot. at 2.) He mentored younger inmates, helping them to rehabilitate and prepare for re-entry into society. (*Id.*) He used his "peace-making ability" to assist BOP staff in maintaining peace and order in prison, which BOP officers explicitly referenced in their letters of support for his resentencing. (*Id.* (citing Resentencing Order at 27-28).) He would "share funds and items with other inmates who had less" and help others with their legal cases. (*Id.*) In his own words, he became "serious about his redemption." (*Id.*)

## II.  LEGAL STANDARD

18 U.S.C. § 3583(e)(1) provides that a court may, after considering certain factors listed under 18 U.S.C. § 3553(a), terminate a term of supervised release previously ordered and discharge the defendant if he has demonstrated "that such action is warranted by [his] conduct" and is in "the interest of justice." *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (per curiam).

Section 3553(a)(5) also mandates the review of "any pertinent policy statement" issued by the United States Sentencing Commission.[3] *See* 18 U.S.C. § 3553(a)(5); U.S.S.G. § 5D1.4, cmt. 1(B) (policy statement). A district court is not required to "make specific findings of fact with respect to each of the Section 3553(a) factors," and a "statement that the district court has considered the statutory factors is sufficient." *United States v. Torres*, No. 21-2511, 2022 WL 17087048, at *3 (2d Cir. 2022) (summary order) (citing *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003)).

## III. APPLICATION

Miller's conduct merits the early termination of his supervised release. First, Miller has served more than one year of supervised release, as this court resentenced him on September 6, 2024. (*See* Resentencing Order.) Consequently, he has satisfied the threshold statutory requirement to make this request. *See* 18 U.S.C. § 3583(e)(1).

Second, the court has considered the Section 3553(a) factors and finds that early termination is appropriate. Even acknowledging the seriousness of his crimes, Miller is now a "different man" after 34 years in prison and "society at large" has "benefit[ted]" from his release. (Resentencing Order at 39, 43); Section 3553(a)(1), (a)(2)(A). Miller also has committed no offenses while on supervised release, weighing against the need for supervision to

---

[3] 18 U.S.C. § 3553(a)(5)(B) only instructs the court to consider a policy statement that "is in effect on the date the defendant is sentenced." The Sentencing Commission adopted the § 5D1.4 policy statement on November 1, 2025. As the court recently explained, however, it considers the statement "even if the defendant had been sentenced" before that date. *United States v. Nelson*, No. 10-CR-0820 (NGG), 2026 WL 1108161, at *1 n.1 (E.D.N.Y. Apr. 23, 2026) (reaching that conclusion after considering decisions from other "courts in this district" and a "plain textual reading" of § 3553(a)(5)(B)).

3

protect to public. (Mot. at 9); Section 3553(a)(2)(C). Although there is a need to deter serious criminal conduct like Miller's, the court also finds it imperative to encourage others to undergo remarkable transformations like his. *See* 18 U.S.C. § 3553(a)(2)(B). And as explained below, society will further benefit from terminating Miller's supervised release.

Third, the court finds termination warranted under the factors laid out in the newly amended supervised release sentencing guidelines. *See* U.S.S.G. § 5D1.4, cmt. 1(B) (policy statement). Miller has complied fully and has no violations while on supervision, has maintained the lowest category of risk, and, since his release, has demonstrated far beyond a mere ability to "lawfully self-manage" and "engage[] in appropriate prosocial activities." (Mot. at 9); U.S.S.G. § 5D1.4, cmt. 1(B)(i)-(v). The court agrees that "there is no evidence that Mr. Miller's release will jeopardize public safety." (Mot. at 9); U.S.S.G. § 5D1.4, cmt. 1(B)(vi). Miller has built a successful and rewarding career as a public speaker and violence prevention advocate. In part, he works for a violence prevention non-profit that operates in Jamaica, Queens— the same neighborhood where Miller conducted his former criminal activity. (*See* Mot. at 4; *see also* Ltrs. of Supp. (Dkt. 941-1) at ECF p.13.) He also travels for various speaking engagements, often on criminal justice reform and encouraging young people to make better choices. (Mot. at 4.) Many of these engagements are unpaid beyond expenses. (*See* Mot. at 4 (citing Ltrs. of Supp. at ECF pp. 21, 23).) He has used a portion of the proceeds from paid speaking engagements to self-publish his book, *From the Cradle to the Grave*. (Mot. at 4.) The book aims to impart lessons he has gleaned along his journey from gang member to dedicated violence prevention advocate, as well as to "educate the public about racial inequality and promote a more just society." (*Id.*)

Terminating Miller's supervised release is also necessary for him to expand the impact of his work. Supervised release precludes

him from accepting many employment offers as he cannot clear a criminal background check. One such job offer came from Second Chance University ("SCU"). (*See* Ltrs. of Supp. at ECF pp. 27-31.) SCU specializes in preventing violence in correctional facilities—something with which Miller had extensive success while incarcerated. The organization tours correctional facilities across the country and would like to hire Miller so that he can provide the "unique voice that [the] organization needs." (*Id.* at ECF p.30.) In the interim, Miller has even stated a willingness to work unpaid and speak at correctional facilities on SCU's behalf. (Mot. at 5.) But he cannot. His status on supervised release makes it practically impossible for him to gain access to these facilities. Since the bulk of SCU's work is inside prisons, inmates must rely on his remote advice rather than having the opportunity to speak with him directly. And although SCU has emphasized that Miller is an exemplary candidate and that they are holding the job offer open for him as long as they can, SCU cannot wait until his five-year supervised release term expires.[4] (Mot. at 5.) The court agrees that it "would be a tragedy" for inmates and other offenders to miss out on Miller's advice. (*Id.*) Further, his income from SCU would allow him to "no longer be scraping by," "provide more for his parents, his daughter, and his grandchildren" while also "prevent[ing] harm in prisons before it happens."[5] (*Id.*)

The Government's response on this point fails to grasp the nature of Miller's predicament. Although it explains that the Government can "consent to reasonable modifications to the defendant's

---

[4] Miller also cannot accept work through Essential Health's Goodwill Village Program. (Mot. at 5.) The program would like to hire Miller to speak with young people in juvenile courts across Tennessee, but he cannot meet the clearance required for the program while still on supervised release. (*See* Ltrs. of Supp. at ECF pp. 36-37.)

[5] Indeed, Miller's family provides him with strong "prosocial support" that will aid him in continuing his law-abiding life. U.S.S.G. § 5D1.4, cmt. 1(B)(iv).

conditions of release," like permitting interstate travel without prior permission, the very fact of supervision limits Miller's ability to reduce harm and provide for himself and his family. (Gov.'s Opp'n (Dkt. 942) at 1.) As the court has already explained in detail, it appreciates the "severity" of Miller's "underlying conduct" and the "significant reduction in sentence" that "he has already received." (*Id.* at 2.) But Miller's continued transformation is nothing short of "extraordinary." (Resentencing Order at 33.) Thus, the court sees no reason to leave in place restrictions that limit Miller from reaching his potential.

Thus, the court has considered the statutory factors under 18 U.S.C. § 3553(a) and the policy statement at U.S.S.G. § 5D1.4, and GRANTS Miller's motion for early termination of supervised release.

SO ORDERED.


Dated:    Brooklyn, New York
          May 2?, 2026


                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

6